IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **DAVID C. PERRY**, a participant in the, KENNEDY FUEL CO. 401(K) PROFIT SHARING PLAN,<br><br>        Plaintiff,<br><br>v.<br><br>**BARRY BLOOMBERG**, as Trustee of the Kennedy Fuel Co. 401(K) Profit Sharing Plan; **GLORIA L. BLOOMBERG**, as Trustee of the Kennedy Fuel Co. 401(K) Profit Sharing Plan; **KENNEDY FUEL CO.**, an Oregon domestic business corporation, as Plan Administrator of the Kennedy Fuel Co. 401(K) Profit Sharing Plan; and **KENNEDY FUEL CO. 401(K) PROFIT SHARING PLAN,**<br>        Defendants. | Case No. 1:15-cv-00408-CL<br><br><br><br>**ORDER** |

CLARKE, Magistrate Judge

Plaintiff David Perry brings claims against the defendants Gloria Bloomberg, David Bloomberg, Kennedy Fuel Co., and Kennedy Fuel Co. 401(k) Profit Sharing Plan alleging they violated the Employee Retirement and Security Act of 1974 ("ERISA"), as amended, 29 USC §§ 1001-1191c. Plaintiff has filed a claim for distribution of benefits under ERISA §502(a)(1)(B) and (a)(2), 29 USC § 1132(a)(1)(B) and (a)(2), and a claim for relief under ERISA § 409, 29 U.S.C. § 1109. The case comes before the Court on Plaintiff's motion for summary judgment (#66). The motion is GRANTED.

## BACKGROUND

The material facts of this case are not in dispute. The Plan is an employee pension benefit plan within the meaning of ERISA, established for the purpose of helping employees save for retirement. Defendant Kennedy Fuel Co., through its officers Barry and Gloria Bloomberg ("the Bloombergs"), established the Plan in 1984. Kennedy Fuel Co. is the Plan Administrator and through its officers is responsible for operating the Plan and directing the Plan's Trustees. The Bloombergs are also the Plan's Trustees. Plaintiff David Perry was a long-time employee of Kennedy Fuel Co., and his retirement savings are held in the Plan.

The Plan holds the employees' money in a trust. Contributions to the trust take two basic forms in the Plan: 1) employee salary deferrals, and 2) employer contributions. Employee salary deferrals consist of money deposited in the Plan's trust pursuant to an employee's direction. The employee directs the employer to deduct a specified amount from his paycheck and deposit that amount, pre-tax, directly into the 401(k) account on the employee's behalf. David Perry directed Kennedy Fuel Co. to deduct a specified amount from his paycheck as employee salary deferrals beginning in 1985 and continuing until he retired in 2014. Employer contributions consist of money deposited by the employer directly into the 401(k) account on the employee's behalf. Kennedy Fuel Co. made employer contributions into the 401(k) account on Perry's behalf from 1985 forward in the form of matching contributions, discretionary contributions and safe harbor contributions.

As the Plan's Trustees, the Bloombergs have exclusive control to invest the money the employer and employees paid into the Plan, and no employee has the right to determine how that money is invested. Kennedy Fuel Co., Barry Bloomberg and Gloria Bloomberg are fiduciaries

of the Plan within the meaning of ERISA Sections 3(21)(A)(i) and (iii). 29 U.S.C. §§ 1002(21)(A)(i) and (iii).

On April 15, 2013 the United States Department of Labor ("DOL") initiated an investigation of the Plan under 29 U.S.C. 1134. On May 5, 2015, the DOL issued its findings and conclusions in a written report. The DOL Report determined that since at least 2001, Plan assets have been invested in essentially two assets: (1) an equity interest in a real estate development company, Crown West Developments, LLC ("Crown West"), and (2) loans to Crown West and two outside entities owned by a Crown West co-owner, with some small sums occasionally held in cash.

According to the DOL Report, Crown West was established in or around the 1990's, and is owned in equal measure by the following members: the Plan (33%); a second profit sharing plan, J.K. Johnson DMD, PC Pension & Profit Sharing Trust (33%); and Pacific Crest Properties, Inc., a corporation owned by developer Gary Whittle (33%). Since the early 2000's, Crown West's sole investment has been a single piece of undeveloped land designated by the Jackson County Recorder's Office as Lot 2107.

Between 1999 and 2012, the Plan loaned $756,883 to Crown West and another $223,047 to two development companies (both owned by Crown West co-owner, Gary Whittle), for a total of $980,010 in loans. Between 1999 and September 2014, the Plan did not collect any monthly payments on any of these loans. As of November 2013, Crown West owed the Plan over 2.3 million dollars. Crown West has no cash and no bank account, and there are no immediate plans to move forward with the development of Lot 2107. Crown West has no ability to pay on any of its obligations. As a result, all of the Plan's assets are illiquid, leaving the Plan unable to pay distributions when due.

Plaintiff David Perry has been a participant in the Kennedy Fuel Co. 401(k) Profit Sharing Plan since 1985. He retired in 2014 at the age of 66 and submitted the documents required for a distribution of the balance in his individual account in the 401(k) Plan. He received no response from the Plan, and he brought this action to compel the distribution under 29 U.S.C. § 1132(a)(1)(B) and for damages against the Plan's fiduciaries Barry Bloomberg, Gloria Bloomberg, and Kennedy Fuel Co. under 29 U.S.C. § 1132(a)(2).

Plaintiff retired in the Plan Year that ended on November 30, 2014. The Plan's third-party administrator, Northwest Retirement Plans, Inc. ("NRP"), sent him a Distribution Election Form on December 1, 2014 that explained his distribution options. Perry elected a total direct rollover to his IRA and returned the completed and signed form to the Plan on December 9, 2014. NRP signed the certified mail return receipt on the Plan's behalf on December 11, 2014 when it received Perry's Distribution Election Form. Plaintiff received no response to the distribution request before he filed this lawsuit on March 12, 2015, 91 days after he made the request.

Plaintiff's vested account balance, as calculated by Kennedy Fuel Co. as of the Plan Year ending on November 30, 2013, was $766,240.49. His salary deferrals and employer contributions from December 1, 2013 through November 30, 2014 as reported in the Plan's records were $7,380.83. Thus, Perry's total requested distribution amount is $773,621.32. He seeks judgment as to that amount from all of the defendants, individually and jointly, with pre- and post- judgment interest. He also seeks the removal of defendant Kennedy Fuel Co. as the Plan Administrator, and the removal of the Bloombergs as Trustees.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

ERISA § 404(a) imposes a "[p]rudent man standard of care" on plan fiduciaries. 29 U.S.C. § 1104(a). This standard requires that the fiduciary discharge her duties "with the care, skill, prudence, and diligence under the circumstances then prevailing [of] a prudent man acting in like capacity...." 29 U.S.C. § 1104(a)(1)(B). It also requires the fiduciary to "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances

it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(C). A plan fiduciary who breaches her fiduciary duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." ERISA § 409(a), 29 U.S.C. § 1109(a); *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1025 (9th Cir. 2009)

ERISA § 502 provides for a civil action by a plan participant "for appropriate relief" for a breach of fiduciary duty. 29 U.S.C. § 1132(a)(2). Under the statute, "'participant' means any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). "One of the overriding goals of ERISA is to prevent the misuse and mismanagement of plan assets by fiduciaries." *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1411 (9th Cir. 1988) ("*Murdock*"). Additionally, "ERISA's legislative history indicates that its standing requirements should be construed broadly to allow employees to enforce their rights." *Vaughn*, 567 F.3d at 1030 citing *Murdock*, 861 F.2d at 1411.

### I. Plaintiff is entitled to relief.

There is no dispute in this case that the defendants are Plan fiduciaries and Plaintiff is a Plan participant. Defendants also concede that Plaintiff is entitled to seek relief in this court for the value of his retirement account.[1] However, defendants argue that it would be imprudent to allow him to do so because the Department of Labor's investigation is ongoing, and it is possible that the DOL will allow the defendants to re-value Plan assets and Plan participants' accounts,

---

[1] "Indeed, there has never been serious doubt that Mr. Perry is entitled to payment of his retirement account. Nor has there been any doubt about why he has not been paid: the Kennedy Fuel Co. 401(k) Profit Sharing Plan (the "Plan") made an unwise decision to invest almost all its assets in an entity called Crown West Developments ("Crown West") that had only one hard asset—an undeveloped 65-acre parcel in Rogue River, Oregon, that has been stalled since the economic recession. These facts were known by Mr. Perry and his attorney before this lawsuit was ever filed, and they were confirmed by the May 5, 2015, letter of the United States Department of Labor (the "DOL") that is part of the record." Def. Resp. 2 (Dkt. #74).

Page 6 – ORDER

thereby eliminating the Bloomberg's personal liability for any deficiency. The Court does not find this argument persuasive. First, the Court sees no reason for the Plaintiff to be forced to wait for disbursement of his retirement account. Plaintiff has already waited more than a year, and defendants have not shown that they acted in good faith when they failed to respond to his request for disbursement.

Second, even if the Court delayed this proceeding, and allowed defendants to continue to work with the DOL to bring the Plan back in to compliance with ERISA, the outcome for the Plaintiff would remain the same. In *Vaughn*, the Ninth Circuit held that a plan participant who had received the full amount of his actuarially vested retirement account could still bring a cause of action against the Plan's fiduciaries claiming that his accounts contained less than they would have had the fiduciaries not breached their duty of prudent investment. 567 F.3d at 1026. Similarly, in this case, even if the DOL allows defendants to re-value the assets and accounts and reduce the actuarially vested amount that is in Plaintiff's account, Plaintiff would still have a claim against the defendants for the difference between that amount and the amount he would have been paid had the defendants not breached their fiduciary duties by failing to diversify the investments of the Plan and by failing to act with diligence in collecting on the loans made by the Plan.

**II.    Plaintiff has sufficiently supported his motion for summary judgment.**

The defendants argue that the exhibits offered by the Plaintiff in support of his motion for summary judgment are inadmissible as hearsay and inadmissible because they have not been authenticated. The Court disagrees. The main piece of evidence provided in support of the Plaintiff's motion is the DOL report, which is a public document, issued by the Oregon Department of Labor after an investigation into the defendants' conduct. The statements and

documents underlying the investigation were produced by defendants in discovery, and the defendants themselves submitted the DOL report to the Court for the purpose of requesting a stay, as mentioned above. Elsewhere in their brief, defendants concede that the report is properly in the record. *Supra* FN1 citing Def. Resp. 2 (Dkt. #74).

As far as proving the valuation of his account, Plaintiff relies mostly on the statement of his account, which states that his vested account balance stood at $766,240.49[2] as of November 30, 201. Dkt 19-3. By his declaration, this document was provided to him by the Plan in the ordinary course of business. Decl. Perry 2, dkt. 19. Plaintiff also relies on the IRS Form 5500 filed by the Plan with the Department of Labor for the plan year ending November 30, 2013. The veracity of this public document is not disputed by the defendants, and it lists the Plan's net assets as $2,793,963. Regardless of whether or not the Plan's accounts actually contain the amounts stated by the Plan to its participants, defendants cannot escape their own representation of what the accounts should contain. The Court cannot think of a better estimation of what the accounts should contain "had the fiduciaries not breached their duty of prudent investment," than the ongoing statements to the Plan participants by the Plan itself. The Plaintiff, therefore, has properly supported his motion for summary judgment.

### III.     Defendants have not shown that any material fact is in dispute.

Having properly supported his motion for summary judgment, Plaintiff is entitled to the relief he seeks unless defendants can produce admissible evidence to establish that a material fact is genuinely in dispute. F.R.Civ.P. 56(c)(1). The Court may consider facts undisputed and grant summary judgment if the Defendants fail to meet that burden. F.R.Civ.P. 56(e). The Defendants have refused to testify in deposition to any material facts about Plaintiff's claims or the administration of the Plan. Miller Dec., Exs. 12-14; Dkt ## 65 – 65-3. The record shows a refusal

---

[2] The balance of Plaintiff's claim includes the contributions accrued through his retirement date.

to testify on all facts material to this litigation and a refusal to produce anyone who will testify for Kennedy Fuel Co., the Plan's Sponsor and Administrator.

The Defendants cannot offer additional testimony or new evidence on matters to which they assert the Fifth Amendment. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 641 (9th Cir. 2012). That privilege can only be used as a shield and not a sword in civil litigation. *Id.*; *United States v. Rylander*, 460 U.S. 752, 758 (1983); *United States v. One Parcel of Real Prop. Commonly Known as 901 N.E. Lakewood Drive, Newport, Or.*, 780 F. Supp. 715, 721 (D. Or. 1991) ("A witness has the right to decline to answer questions on the basis of the Fifth Amendment, but this is not a substitute for evidence that would meet the burden of production.")

In *One Parcel*, the defendant in a civil forfeiture case asserted her Fifth Amendment privilege against self-incrimination regarding her involvement with illegal drugs on the property in question. 780 F. Supp. 715 (D. Or. 1991). She offered as exhibits 13 affidavits from her friends and relatives, which purported to show that she was not involved with drugs, that her income was legitimate, and that certain statements by a DEA agent linking her and the property with drugs were incorrect. *Id.* at 721. The Court granted the government's motion to strike the affidavits based on the defendant's refusal to be examined with respect to their contents. *Id.* Similarly, the defendants here cannot offer testimony or new evidence on matters to which they asserted the Fifth Amendment. Because they assert their Fifth Amendment privilege as to all material facts in this case, the defendants fail to meet their burden of production under F.R.Civ.P. 56 (a) and (c) to establish a genuine dispute as to any material fact.

### IV. Plaintiff is entitled to the remedies requested.

Based on the evidence in the record, it is clear that the Plan does not have the assets necessary to pay the money owed to the Plaintiff as ordered by this Court. Barry and Gloria

Bloomberg are plan participants. Each has an individual account in the Plan. ERISA provides that retirement plan benefits cannot be assigned or alienated. 29 U.S.C. § 1056(d)(1). That provision protects retirement benefits from most creditors. However, Congress provided an exception to that protection if the participant is "ordered or required to pay . . . under a civil judgment . . . entered by a court in an action brought in connection with a violation . . . of part 4 of [ERISA]." 29 U.S.C. § 1056(d)(4)(A)(ii) Violations of 29 U.S.C. § 1104, as alleged here, are within Part 4 of ERISA. The Court therefore orders that any money in the Plan's individual accounts for Barry and Gloria Bloomberg be used by the Plan towards compliance with Perry's distribution request. The Plan may not meet its obligations under this Order by distributing debt owed to the Plan, or other accounts receivable, to the Plaintiff.

## ORDER

For the forgoing reasons, the Plaintiff's motion for summary judgment (#66) is GRANTED. Plaintiff is entitled to the following relief:

1. $773,621.32 against the Plan on his claim under 29 U.S.C. § 1132(a)(1)(B);

2. $773,621.32 against Kennedy Fuel Co., Barry Bloomberg and Gloria Bloomberg, individually and jointly, on his claims under 29 U.S.C. § 1132(a)(2) and § 1009, reduced by any amount paid to Perry by the Plan;

3. An order that any money in the Plan's individual accounts for Barry and Gloria Bloomberg be used by the Plan toward compliance with Perry's distribution request;

4. Pre-judgment interest from December 11, 2014, when Perry submitted his distribution request to the Plan, to the date of judgment;

5. Post-judgment interest from the date of judgment until paid;

6. Attorneys' fees and costs, pursuant to 29 U.S.C. § 1132(g), to be determined under F.R.Civ.P. 54 on a schedule to be set by the Court; and

7. Removal of Defendant Kennedy Fuel Co. as the Plan Administrator and the Trustees Barry and Gloria Bloomberg.

ORDERED and DATED this __20__ day of January, 2016.

MARK D. CLARKE
United States Magistrate Judge